STEVE HAVARD V. THE STATE.

No. 4344. Decided January 27, 1909.

**1.—Manslaughter—Evidence—Res Gestae.**

Upon trial for manslaughter there was no error to admit the statement of the deceased to the effect that defendant cut deceased at the gate and cut him all the way down to where he was overtaken by defendant and after he did overtake him; this being part of the res gestae.

**2.—Same—Evidence—Res Gestae—Charge of Court—Declarations of Third Party.**

Upon trial for manslaughter where declarations and statements of the brother of the deceased occurring shortly after and in such juxtaposition of the difficulty as to make them res gestae were admitted in evidence for the defense, the court's charge limiting such testimony to the purposes of impeachment was error.

**3.—Same—Charge of Court—Mutual Combat—Self-Defense.**

See opinion for facts which were held not to raise the issue of mutual

combat; and it was error to submit this issue in the court's charge and thus eliminate the right of self-defense.

Appeal from the District Court of Angelina. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of manslaughter; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*E. J. Mantooth* and *E. B. Robb,* for appellant.—On question of mutual combat: Cases cited in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for manslaughter, the punishment assessed being four years confinement in the penitentiary.

The difficulty resulting in the death of the deceased occurred at night about nine o'clock at a social gathering. Rufus Cook, brother of deceased, and Arthur Shannon had some words in the house where the social gathering was in progress, and went out to the gate to settle the trouble. As they went out Rufus called to his brother (the deceased) to go with him; that the deceased went along, as did Albert Thompson and appellant. Just after passing out of the gate Rufus Cook undertook to pick up a singletree with which to strike Arthur Shannon. Finding, however, that the singletree was attached to a pair of heavy stretchers he abandoned his attempt to get it, or threw it down, whereupon Arthur Shannon undertook to pick it up. When he did so Rufus Cook picked up a pole and struck at Shannon. Rufus Cook dropped the pole and ran with Arthur Shannon in pursuit. Just at this juncture the deceased undertook to interfere in the fight, and appellant called to him, and said, "Hold on, there are two of you." Deceased immediately turned and advanced upon appellant with a stick or weapon in his hand as if to strike him. Appellant drew his knife, and as deceased approached him and struck at appellant with the instrument he had in his hand, appellant cut him with his knife. That he struck two or three licks with the knife, the last presumably striking him in the back or just under the shoulder, as deceased turned. Deceased immediately turned to run and told appellant not to cut him any more. Appellant chased him for some distance, he contending that he requested deceased to stop. They ran some two hundred and seventy or two hundred and eighty steps when appellant caught deceased and carried him back in the direction of the house about seventy-five or eighty yards. Just at this juncture the deceased became weak from his wounds and as the witnesses say, gave down. Appellant went to the house of John Swain where the party was in progress and informed Gilbert and Albert Thompson, with the re-

quest that they go down and do something or render some assistance to deceased. They and others carried deceased to the house where he died some two or three hours later. One wound was across the muscle of the arm, about or just above the elbow, severing the artery, from which wound he bled to death. There were two other cuts, one over the eye and a stab in the back, neither of which were of any serious consequence. Evidence was introduced also of a statement made by deceased after the cutting, while being carried to the house, that appellant cut him at the gate and cut him all the way down to where they stopped, and after they ceased running. The testimony of Thompson was to the effect that when Rufus Cook threw down the singletree and ran, Arthur Shannon pursuing him, deceased, Sweet Cook, took after Arthur, and that appellant then told the deceased to hold on there, there are two of you. That deceased immediately turned on appellant and they tussled around a little and hit two or three licks. That the last lick was when appellant hit Sweet Cook in the back. They were close together when appellant inflicted the last cut, which was in the back. The testimony of Tom Thompson, Joe Havard and John Swain discloses the fact that there was blood at the place where the difficulty occurred near the gate; that there was blood spattered on a pine tree near where they fought, and that it was found on the ground from where the difficulty first occurred some two hundred and eighty steps down the road, and about eighty yards further on beyond where deceased's body was found. There is quite a lot of detail testimony in addition to the above, which we deem unnecessary to notice. There is one fact, however, that might be stated; that is, that one of the witnesses testified that he noticed a knife in appellant's hand prior to being struck at by deceased.

There are several questions presented for review.

1. The statement of the deceased to the effect that appellant cut him at the gate and cut him all the way down to where he was overtaken by appellant, and after he did overtake him, we think, was admissible as res gestae under the facts stated in the bill and in the record. It was within a few moments of the difficulty, and under the decisions of this State we are of opinion it was admissible as res gestae. Appellant's objection to the admission of this evidence was not well taken.

2. Appellant offered to prove by Tom Thompson that Rufus Cook at Mr. Swain's house, and in the presence of this witness, the night his brother was killed, and shortly afterwards, made the statement that the death of his brother was pretty hard; that he felt he was responsible for it; that he had invited the boys out to fight and had asked Sweet to go with him, and Sweet done his part, but Millard Connor had not done a damn thing he said he would do. This was admitted and went before the jury as evidence. The court limited this to impeachment of the witness Rufus Cook. We are of opinion

that, under the circumstances of this case, this was legitimate testimony to go to the jury as original evidence, and should not have been limited to the purposes of impeachment. In other words, the declarations and statements of Rufus Cook occurring so shortly after and in such juxtaposition to the difficulty, it should be considered as res gestae of the transaction.

3. The court charged upon mutual combat. By this charge appellant's right of self-defense is eliminated. We believe this was error. As we understand this record the evidence does not disclose the issue of mutual combat. Kelly v. State, 27 Texas Crim. App., 565; Polk v. State, 30 Texas Crim. App., 657; Everett v. State, 30 Texas Crim. App., 682. There are many other cases that might be cited to the same effect. This was a very serious matter in this case, and the charge as given eliminated the entire issue of self-defense.

For this error the judgment is reversed and the cause is remanded.

*Reversed and remanded.*